**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2655-19

THERESA C. GRABOWSKI,

     Plaintiff-Appellant,

v.

WILLIAM BASKAY and
AMANDA CARLSON
BASKAY, individually,
jointly, severally and/or
in the alternative,

     Defendants-Respondents.

_____

Argued June 22, 2021 – Decided July 9, 2021

Before Judges Yannotti and Haas.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-0736-19.

Andrew T. Cupit argued the cause for appellant.

Ted M. Rosenberg argued the cause for respondent William Baskay (Ted M. Rosenberg and Robert M. Rosenberg, on the brief).

Daniel L. Mellor argued the cause for respondent Estate of Amanda Carlson Baskay (Kulzer & DiPadova, attorneys; Robert W. Williams and Daniel L. Mellor, on the brief).

PER CURIAM

In this action for the collection of attorney's fees, plaintiff Theresa C. Grabowski, Esq. appeals from the Law Division's order granting defendants William Baskay's and Amanda Baskay's[1] motions for summary judgment and dismissing Grabowski's complaint as barred by the six-year statute of limitations for such actions.[2] Having carefully reviewed this matter, we conclude that summary judgment was inappropriate in this case because there were genuine questions of material fact that could not be resolved on the disputed motion record. Therefore, we reverse and remand for further proceedings.

Defendants owned a house that was damaged in a lightning storm in August 2007. Their insurance company declined to pay all of the costs associated with the damage. Defendants retained Grabowski to bring an action against the insurance company to recover these costs. In May 2009, Grabowski filed a sixteen-count complaint against the insurance company, and alleged a

---

[1] Because defendants share the same surname, we refer to them individually by their first names and collectively as defendants to avoid confusion.

[2] N.J.S.A. 2A:14-1.

number of different causes of action, including breach of contract and violation of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -195. Among other things, defendants sought punitive damages, counsel fees, and costs.

The parties signed, but did not date, a written retainer agreement. Of particular relevance to the current dispute, this agreement included a provision that stated:

> This firm's duties end upon entry of a Final Judgment or Order by the Court, or, if litigation is not pending, upon completion of the duties assigned or for any of the reasons for withdrawal stated in [the agreement]. This agreement will apply only to work to be performed by this firm at the trial level. Motions for reconsideration or to enforce a Judgment or Order, while made to the trial court, are considered to be beyond the scope of the work to be performed by this firm at the trial level. If, after completion of the matter at the trial level, either you or the opposing party appeals the result, a new retainer agreement will be drawn which will set forth our agreement with respect to the retention of this firm on appeal.

Following motion practice, the trial court dismissed defendants' CFA and punitive damages claims. After a multi-day trial, a jury returned a verdict in favor of defendants and against the insurer in the amount of $9025. The trial court entered a judgment confirming this verdict on August 25, 2011. On

A-2655-19

October 20, 2011, the court awarded defendants $750 in counsel fees and a $500 witness fee.[3]

The parties' accounts of what happened next are dramatically different. Grabowski claims that as she was leaving the courthouse with defendants following the jury's verdict, they asked her to pursue an appeal seeking to overturn the trial court's dismissal of their claims for damages under the CFA, punitive damages, and additional counsel fees and costs. Grabowski alleged she agreed to represent defendants on appeal, and further consented to continue representing them at no additional charge.[4] Grabowski alleged she did not insist that the parties execute a new retainer agreement because she would not be charging defendants any additional fees.

William and Amanda disputed Grabowski's assertions in the certifications they submitted in support of their summary judgment motions. William stated that Grabowski was "only retained for work at the trial court level" as set forth in the retainer agreement. He acknowledged that "Grabowski filed an appeal from the trial court order dismissing [defendants'] claims under the CFA" and

---

[3] The parties have not provided us with copies of these orders.

[4] Grabowski asserted that throughout the trial, defendants had paid her little, if anything, toward their accumulating legal fees.

A-2655-19

told defendants "that she would not charge any fee for her professional services related to the appeal." However, he and Amanda did not sign a new retainer agreement concerning the appeal.

In a later certification, William stated that he "did not direct . . . Grabowski to file an appeal. She did so on her own." He also alleged he never "ratif[ied] the filing of the appeal."

In her certification, Amanda stated that defendants "never hired [Grabowski] to pursue any appeal of the insurance case" and that Grabowski decided on her "own . . . to appeal the insurance case." Amanda also claimed that Grabowski told defendants she "would be funding the costs of the appeal out of her own funds." In a subsequent certification, Amanda stated she "never asked [Grabowski] to pursue an appeal."

Grabowski filed a notice of appeal on defendants' behalf on September 26, 2011.[5] The insurer then filed a cross-appeal, challenging the jury's verdict in defendants' favor and the trial court's award of counsel and witness fees.[6] Allegedly with defendants' permission, Grabowski used the money awarded to

---

[5] Docket No. A-0411-11.

[6] Docket No. A-1403-11.

defendants in the judgment, that had been placed in her escrow account, to obtain some of the transcripts needed for the appeal.

On December 20, 2011, Grabowski sent an email to defendants telling them that she "need[ed] to hear from [them] regarding payment" of her outstanding legal fees. Less than two hours later, William sent an email to Grabowski that began, "As it stands now there is to be no appeal." William then complained that Grabowski had told defendants the escrowed judgment funds were sufficient to pay for all of the transcripts, but now wanted an additional $5000 to cover this expense. William also asked Grabowski to forward him an itemized bill listing her fees so he could determine a payment schedule. William stated in a certification that by telling Grabowski, "[a]s it stands now there is to be no appeal," he wanted her to terminate the appeal.

The next day, however, Grabowski replied to William's email by advising him that "[t]he appeal has already been filed – which you knew, approved of and agreed to throughout (since the adverse rulings). As you know, the appeal was filed back in September, as I forwarded copies of it to you." She also informed William that she did not need an additional $5000 for the transcripts.

William did not reply to this email, and Grabowski continued to represent defendants in the appeal and cross-appeal. Neither William nor Amanda ever

6

specifically told Grabowski to end her efforts or dismiss the appeal she filed on their behalf.

In defendants' appeal, Grabowski filed a merits brief on October 9, 2012, and a reply brief to the insurer's brief on November 19, 2012. Grabowski filed a responding brief in the insurer's cross-appeal on July 6, 2012.

In November 2012, defendants separated and began divorce proceedings. The record contains two letters that William's divorce attorney sent to Grabowski asking about the pending appeals and defendants' outstanding legal fees because these issues might have an impact upon the equitable distribution of defendants' assets.

On April 23, 2014, this court consolidated the two appeals and issued its decision. Baskay v. Franklin Mut. Ins. Co., Nos. A-0441-11 and A-1403-11 (App. Div. Apr. 23, 2014). For the reasons set forth in that opinion, this court affirmed the trial court's dismissal of defendants' CFA and punitive damages claims, and reversed the order granting counsel and witness fees to defendants. (slip op. at 1).

The following month, defendants obtained a Dual Judgment of Divorce in their dissolution action. This judgment contained a provision stating that the parties were aware that Grabowski had asserted they owed her between $40,000

and $60,000 in legal fees and that, if she attempted to collect this debt, they would "take it to fee arbitration."

William thereafter filed an ethics complaint against Grabowski.[7] In connection with that proceeding, Grabowski asserted she obtained a certification from Amanda that is dated February 16, 2016. Grabowski alleged that Amanda signed this certification in her presence. The certification stated that "[e]ach and every one of William's claims against [Grabowski] is simply untrue and part of his efforts to harm me and everyone close to me. Simply put – neither William or [sic] I have any basis to make any claim against [Grabowski]." The certification also confirmed Grabowski's account of defendants' asking her to file the appeal on their behalf following the jury's verdict.

In a certification filed in connection with her summary judgment motion in this case, Amanda claimed she had never seen the February 16, 2016 certification before. Amanda stated that she "reviewed the signature on this document and d[id] not believe this [was her] signature." Amanda speculated

---

[7] The outcome of the ethics proceeding is not clear from the record. Grabowski asserted in a certification that William's claims against her were "malicious" and "false." In a responding certification, William stated that his complaint "was not determined to be 'baseless[,]'" but that the report issued in the matter was "confidential and cannot be publicly disseminated."

A-2655-19

that Grabowski "gave this document to [Amanda's] mother and that [her] mother signed [Amanda's] name on the document without [her] knowledge or consent."[8]

On April 6, 2019, Grabowski filed a complaint against defendants in the Law Division, seeking to recover attorney's fees "in excess of $126,678" for her representation of them in their action against their insurance company. Defendants filed separate answers to the complaint and both raised the six-year statute of limitations as an affirmative defense.

There was no written discovery conducted by the parties and none of the parties were deposed. Therefore, the parties' conflicting factual claims were not subjected to cross-examination.

Soon after submitting their answers to the complaint, defendants filed motions for summary judgment, and primarily argued that Grabowski's claim was barred by the statute of limitations. Grabowski filed a cross-motion for summary judgment.

As set forth above, the facts of this case are disputed and far from settled. However, the law applicable to the statute of limitations in attorney fee collection actions is not.

---

[8] Amanda died during the pendency of the present appeal and her estate was substituted into the case in July 2020.

9

N.J.S.A. 2A:14-1 requires that a claim for breach of contract be filed within six years from the date the cause of action accrues. However, "[a] contract for legal services is not like other contracts." Estate of Pinter by Pinter v. McGee, 293 N.J. Super. 119, 128 (App. Div. 1996) (quoting Cohen v. Radio-Electronics Officers Union, Dist. 3, 275 N.J. Super. 241, 259 (App. Div. 1994)).

In Pellettieri, Rabstein & Altman v. Protopapas, we explained that because of "the unique and special relationship between an attorney and a client, ordinary contract principles governing agreements between parties must give way to the higher ethical and professional standards enunciated by our Supreme Court." 383 N.J. Super. 142, 150 (App. Div. 2006) (quoting Estate of Pinter by Pinter, 293 N.J. Super. at 128). In Protopapas, which governs this attorney-fee collection matter, we set forth a bright line rule that a cause of action accrues for unpaid counsel fees between an attorney and client "when the services are concluded or [the] attorney-client relationship is ended, whichever occurs first." Id. at 145.

In this case, defendants each took the position that Grabowki's cause of action for the collection of her fees accrued no later than December 20, 2011. By that time, a final judgment had been entered in their favor in the trial court litigation against their insurance company and the trial court had awarded them

10

nominal attorney's and witness fees. As noted above, the retainer agreement between defendants and Grabowski stated her duties would "end upon entry of a Final Judgment or Order by the Court . . . ."

While admittedly aware that Grabowski had filed an appeal from the final judgment, defendants asserted they never authorized her to do so and that William instructed Grabowski to end the appellate litigation in his December 20, 2011 email. Because defendants' contract with Grabowski stated that "a new retainer agreement [would] be drawn" in the event of an appeal, they argued they could not continue their professional relationship with her absent such a written agreement.

Under Protopapas, if Grabowski's services were "concluded or [the] attorney-client relationship [was] ended" no later than December 20, 2011, her April 6, 2019 complaint for the collection of her fees was barred by the six-year statute of limitations. Protopapas, 383 N.J. Super. at 145. Therefore, defendants sought summary judgment in their favor.

In response, Grabowski argued that she continued to represent defendants after the jury returned its verdict in the trial court litigation in August 2011. Grabowski asserted that defendants asked her to appeal the jury's decision as they left the courthouse and she agreed to do so. Grabowski stated there was no

11

need for a new retainer agreement because she was not going to charge defendants any additional fees for her work on the appeal and, with defendants' permission, she planned to use the jury award to pay for the costs of the transcripts. Grabowski's factual assertions on these points were corroborated by Amanda's February 16, 2016 certification, although Amanda later claimed she had never seen that document before.

Grabowski filed a notice of appeal on defendants' behalf and also represented them when their insurance company filed a cross-appeal against them. Grabowski asserted she kept both defendants fully apprised of the progress of the case.

When she received William's December 20, 2011 email, Grabowski did not interpret it as an instruction to terminate the appeal or to cease defending defendants in the cross-appeal. As she noted in her December 21, 2011 reply email to William, the appeal had already been filed and, therefore, his statement that "[a]s it stands now there is to be no appeal" made no sense.

Thereafter, Grabowski continued to represent defendants in the appeals and, after they separated, was in contact with their attorneys concerning the status of those matters. Both appeals were concluded when we issued our opinion in the consolidated cases on April 23, 2014. Based upon Protopapas,

12

Grabowski argued that if her "services . . . concluded or [the] attorney-client relationship . . . ended" on April 23, 2014, her April 6, 2019 complaint was filed before the expiration of the six-year statute of limitations. Protopapas, 383 N.J. Super. at 145.

Following oral argument, the trial court granted defendants' motions for summary judgment and denied Grabowski's cross-motion. In its written statement of reasons, the court did not address the parties' divergent factual presentations and, instead, focused entirely upon their retainer agreement. Because the agreement stated "that the matter for which [Grabowski] was retained concluded upon the entry of Final Judgment or Order," the court found Grabowski's services and the attorney-client relationship ended in September 2011 when the final judgment was entered.[9] Therefore, the court found that Grabowski's April 6, 2019 complaint was barred by the statute of limitations.

The trial court subsequently denied Grabowski's motion for reconsideration. This appeal followed.

On appeal, Grabowski contends the trial court erred by granting summary judgment to defendants because the many unresolved factual issues surrounding

---

[9] As noted above, the trial court entered its final judgment in defendants' litigation against their insurer on August 25, 2011.

the date on which her cause of action accrued prevented the case from being resolved in this manner. We agree.

In deciding motions for summary judgment, like the trial court, we review "the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014); R. 4:46-2. Summary judgment should be denied unless the moving party's right to judgment is so clear that there is no room for controversy. Akhtar v. JDN Props. at Florham Park, L.L.C., 439 N.J. Super. 391, 399 (App. Div. 2015). This means summary judgment should be granted only "when the evidence 'is so one-sided that one party must prevail as a matter of law.'" Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The court's function is not to weigh the evidence to determine the final outcome, but only to decide if a material dispute of fact exists. Suarez v. E. Int'l Coll., 428 N.J. Super. 10, 27 (App. Div. 2012). It is not the judge's role to assess credibility or determine the truth of the evidence, DeWees v. RCN Corp., 380 N.J. Super. 511, 522 (App. Div. 2005), or to examine whether the preponderance of the evidence weighs towards one side or the other. Mandel v.

A-2655-19

UBS/PaineWebber, Inc., 373 N.J. Super. 55, 71 (App. Div. 2004). A motion judge may not abrogate the jury's exclusive role as the finder of fact. Suarez, 428 N.J. Super. at 27. In addition, we owe no special deference to the motion judge's legal analysis. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018).

Applying these principles, we are constrained to conclude that the trial court erred by granting summary judgment to defendants in the face of the many genuine issues of material fact that permeated the motion record. As the court found, the parties' retainer agreement did state that Grabowski's "duties end upon entry of a Final Judgment or Order by the Court" and "appl[ied] only to work to be performed by [her] at the trial level."

However, Grabowski presented evidence which, if found to be credible, clearly supported her contention that the moment the trial ended with the jury's verdict, defendants asked her to continue to represent them in an appeal from that verdict. This evidence included her own certification describing the parties' arrangement concerning the appeal; her December 21, 2011 email to William telling him the appeal had already been filed; her communications with William's attorney during defendants' divorce litigation; and Amanda's February 16, 2016 certification.

To be sure, defendants submitted evidence of their own disputing Grabowski's factual contentions on this point. In their certifications, William and Amanda alleged they: never authorized Grabowski to file an appeal on their behalf; told her there was to be no appeal; and were never informed of the status of either the appeal or the insurer's cross-appeal. Amanda also disputed that she signed or even saw the February 16, 2016 certification before Grabowski submitted it to the trial court.

However, these factual issues could not be resolved on the basis of the parties' competing certifications and briefing. When, as here, the determination of material disputed facts depends primarily on credibility evaluations, summary judgment should not be granted. Petersen v. Twp. of Raritan, 418 N.J. Super. 125, 132 (App. Div. 2011).

The provision in the parties' retainer agreement that "a new retainer agreement will be drawn" if defendants or their insurer filed an appeal does not change this result. Grabowski asserts the parties decided that a new written agreement was unnecessary because she was not going to charge defendants any additional fees for handling either their appeal or the cross-appeal filed by the insurer. If Grabowski's factual assertions on this point are credible, nothing in

16

the parties' retainer agreement prevented them from altering or waiving this provision.

Moreover, it is well settled that an attorney-client relationship can be found without a written agreement and even when the attorney does not bill for the services provided. Herbert v. Haytaian, 292 N.J. Super. 426, 436 (App. Div. 1996). It can be established by inference or inferred from conduct demonstrating the performance of legal services. In re Palmieri, 76 N.J. 51, 58-59 (1978). Thus, the absence of a written agreement between the parties concerning Grabowski's work before the Appellate Division did not support the trial court's decision granting defendants' summary judgment motions in the face of the conflicting factual assertions presented in this matter.

We also reject defendants' argument that Grabowski's representation ended on December 20, 2011 when he sent her the email stating that "[a]s it stands now there is to be no appeal." This email is hardly an unambiguous statement that Williams intended to terminate Grabowski's services. Indeed, when Grabowski informed him the next day that the appeal had already been filed, William failed to respond. Instead, Grabowski proceeded to file briefs in both defendants' appeal and the insurer's cross-appeal, and kept William's attorney advised of the status of these matters because of their relevance to the

17

questions of equitable distribution presented in defendants' divorce litigation. At no point did William or either of the parties' attorneys instruct Grabowski to bow out of the appeals.

Again, the exchange of emails between William and Grabowski in December 2011 concerning the status of the appellate proceedings raised conflicting factual assertions that required an evaluation of the parties' credibility. Therefore, summary judgment should not have been granted in this case.

Defendants also unpersuasively argue that the appeals, even if authorized by them, were separate matters from the trial litigation for which Grabowski seeks to recover her fees. However, even the disputed factual record in this matter reveals that the appeals, if actually authorized by defendants by word or by deed, were a continuation of Grabowski's representation of them in the trial matter.

In sum, we are satisfied that the genuine issues of material fact described above precluded the trial court from granting summary judgment to defendants. Therefore, we reverse this order and remand for further proceedings. The trial court should give the parties the opportunity to engage in discovery, including depositions. In remanding this matter, we do not suggest a preferred result, but

18

state only that the trial court should not have considered the parties' motions in the face of the credibility issues raised by the parties' competing factual presentations.

On remand, the trial court should also consider the parties subsidiary arguments including, by way of example, defendants' claim that Grabowski's complaint should have been barred because she did not give them "pre-action notice" of their right to seek fee arbitration as required by Rule 1:20A-6, and Grabowski's assertion that the statute of limitations should have been equitably tolled. The trial court did not address these contentions in its written statement of reasons. While we acknowledge that our review of an order granting summary judgment is de novo, RSI Bank, 234 N.J. at 472, "our function as an appellate court is to review the decision of the trial court, not to decide the motion tabula rasa." Estate of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 302 (App. Div. 2018). Therefore, these arguments must be considered by the trial court in the first instance on remand.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION