**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0988-20

DIANA ACEVEDO,

     Plaintiff-Appellant,

v.

CITY OF MILLVILLE,

     Defendant-Respondent,

and

SOUTH JERSEY GAS
COMPANY,

     Defendant.

_____

Argued November 29, 2021 – Decided December 17, 2021

Before Judges Sumners and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0404-18.

Bruce A. Wallace argued the cause for appellant.

Mark W. Strasle argued the cause for respondent (Madden & Madden, PA, attorneys; Patrick J. Madden and Mark W. Strasle, on the brief).

PER CURIAM

In this New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to -12-3, negligence suit against defendant City of Millville (City), plaintiff Diana Acevedo's complaint alleges she suffered personal injuries when she stepped into a "depression or hole" while walking on South High Street in the City. Plaintiff alleges the City's negligent maintenance of the street created the purported dangerous condition that caused her injuries.

The trial court granted the City's motion for summary judgment, finding the City immune from liability under N.J.S.A. 59:4-2 because plaintiff failed to present sufficient evidence establishing the depression or hole constitutes a dangerous condition within the meaning of N.J.S.A. 59:4-1(a). Plaintiff contends the court erred by granting summary judgment because there is a genuine issue of material fact as to whether the depression or hole is a dangerous condition. We disagree and affirm.

I.

We discern the following undisputed facts from the parties' Rule 4:46-2 statements and the record of the proceedings before the motion court. On June

2

8, 2018, plaintiff parked her vehicle on South High Street. She chose not to walk on the available pedestrian sidewalk on the right side of the street, and instead walked in the street toward her destination, the City's municipal building. Plaintiff testified "[e]verybody walks on that roadway because there's really no traffic there and it's, like, right there in front of the court, in front of the police station," and that "there were other people walking on the . . . street with" her. As plaintiff walked on the roadway, "both of [her] feet went into a dip" and she "felt a bad pain – mostly in [her] left foot."[1]

Plaintiff photographed the "depression" in the roadway she claims constituted the dangerous condition that caused her injuries. The City retained an expert engineer to examine the depression and determine if it constituted a dangerous condition. The engineer found the depression ranged in depth from one-half inch to one-and-two-tenths of an inch and was approximately five-and-six-tenths-feet wide and one-and-nine-tenths-feet long. The engineer noted the depression was "located in the roadway[] and not in a sidewalk or crosswalk" and opined it constituted "an acceptable lift for a temporary pavement patch [in

---

[1] The nature and extent of plaintiff's injuries are not detailed in the summary judgment record.

A-0988-20

the roadway]" under applicable New Jersey Department of Transportation regulations.

The City's municipal engineer also investigated the depression and reported it was a "patch . . . over an old water service leak" from approximately two years earlier. The patch repair was made by the City's Water Department. The Water Department's superintendent testified that repairs to a leaking water line on South High Street were made in 2014. The superintendent testified that photographs of the depression showed cigarette butts and accumulated dirt, and that it looked like the depression was there for a couple of months.

Plaintiff filed a complaint alleging the City's negligent failure to maintain South High Street resulted in the depression that caused her to fall and suffer personal injuries. Following the completion of discovery, the City moved for summary judgment. In a written statement of reasons granting the motion, the court determined plaintiff failed to present sufficient evidence establishing the depression in the street constituted a dangerous condition within the meaning of N.J.S.A. 59:4-1(a) and N.J.S.A. 59:4-2. The court reasoned the street was intended for vehicular traffic, and the depression "is clearly not a dangerous condition for vehicle traffic, the intended use of the roadway." The court further explained there was a sidewalk available "less than ten feet away that [led] from

A-0988-20

plaintiff's vehicle to her intended destination, the municipal building." The court found that "[t]o permit municipal liability here would create a heavy burden upon a governmental entity to ensure that every inch of city streets are paved smooth and without any uneven surfaces even when they provide a sidewalk for pedestrians to use." The court granted defendant's summary judgment motion because "no reasonable jury could find [the depression] to be a 'dangerous condition' as defined in the TCA . . . ." Plaintiff appeals from the court's summary judgment order.

## II.

We conduct a de novo review of an order granting a summary judgment motion, Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016), and we apply the same standard as the trial court, State v. Perini Corp., 221 N.J. 412, 425 (2015). In considering a summary judgment motion, "both trial and appellate courts must view the facts in the light most favorable to the non-moving party, which in this case is plaintiff." Bauer v. Nesbitt, 198 N.J. 601, 604 n.1 (2009) (first citing R. 4:46-2(c); and then citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). Summary judgment is proper if the record demonstrates "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law." Burnett v. Gloucester Cnty.

A-0988-20

Bd. of Chosen Freeholders, 409 N.J. Super. 219, 228 (App. Div. 2009) (quoting R. 4:46-2(c)). Issues of law are subject to the de novo standard of review, and the trial court's determination of such issues is accorded no deference. Kaye v. Rosefielde, 223 N.J. 218, 229 (2015).

Public entities are presumptively "immune from tort liability unless there is a specific statutory provision imposing liability." Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2002). "Under the TCA, immunity [for tort liability] is the rule and liability is the exception." Posey v. Bordentown Sewerage Auth., 171 N.J. 172, 181 (2002). Thus, "a public entity is 'immune from tort liability unless there is a specific statutory provision' that makes it answerable for a negligent act or omission." Polzo v. Cnty. of Essex, 209 N.J. 51, 65 (2012) (quoting Kahrar, 171 N.J. at 3); see also N.J.S.A. 59:2-1(a) ("Except as otherwise provided by [the TCA], a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity . . . .").

The TCA allows imposition of tort liability against public entities for injuries caused by conditions of their property, but only based on limited circumstances. Under N.J.S.A. 59:4-2, a public entity has tort liability for injuries caused by the entity's property only where it is established: (1) the public entity's "property was in dangerous condition at the time of the injury";

A-0988-20

(2) "the injury was proximately caused by the dangerous condition"; (3) "the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred"; and (4) "a negligent or wrongful act or omission of [a public] employee . . . created the dangerous condition" or "a public entity had actual or constructive notice of the dangerous condition[.]" See also Vincitore v. N.J. Sports & Expo. Auth., 169 N.J. 119, 124-25 (2001). A public entity is not liable for a dangerous condition of its property "if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable." N.J.S.A. 59:4-2.

A plaintiff asserting a tort claim against a public entity for injuries allegedly caused by a condition on its property must present evidence satisfying each of the elements of a cause of action under N.J.S.A. 59:4-2. Polzo, 209 N.J. at 66; see also Carroll v. N.J. Transit, 366 N.J. Super. 380, 386 (App. Div. 2004) (explaining N.J.S.A. 59:4-2 "places the burden squarely on the plaintiff to prove each of its elements"). A failure to present sufficient evidence establishing any element of a cause of action under N.J.S.A. 59:4-2 requires dismissal of the claim. Polzo, 209 N.J. at 66.

Here, the court granted the City summary judgment based on its finding plaintiff failed to present sufficient evidence establishing the depression in the

7

roadway constituted a dangerous condition of property under N.J.S.A. 59:4-2.[2]

Under the TCA, a dangerous condition is defined as a "condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-1(a). Thus, the issue presented is whether the undisputed facts establish, as a matter of law, that the depression in the street created a substantial risk of injury when the property was used with due care. See Garrison v. Twp. of Middletown, 154 N.J. 282, 287 (1998).

"[N]ot every defect in a [street] . . . is actionable" under N.J.S.A. 59:4-2. Polzo, 209 N.J. at 64 (quoting Polyard v. Terry, 160 N.J. Super. 497, 508 (App. Div. 1978), partially overruled on other grounds by Cartel Capital Corp. v.

---

[2] Based on the record presented on appeal, it appears the City's summary judgment motion was based solely on the claim plaintiff did not have evidence establishing the first element of a cause of action under N.J.S.A. 59:4-2 — that the depression constituted a dangerous condition. And, as noted, the court granted summary judgment based exclusively on its determination the depression did not constitute a dangerous condition as a matter of law. We therefore limit our de novo review of the record to that element of plaintiff's cause of action under N.J.S.A. 59:4-2, and do not address defendant's argument on appeal that it is also entitled to summary judgment because plaintiff lacked evidence the City's action or inaction concerning the alleged dangerous condition was palpably unreasonable. That issue was not addressed or decided by the motion court and our de novo review of the summary judgment record does not permit or require that we address the issue "tabula rasa." Est. of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 301-02 (App. Div. 2018).

Fireco of N.J., 81 N.J. 548, 410 (1980)).  To pose a "'substantial risk of injury' a condition of property cannot be minor, trivial, or insignificant.  However, the defect cannot be viewed in a vacuum.  Instead, it must be considered together with the anticipated use of the property . . . ."  Atalese v. Long Beach Twp., 365 N.J. Super. 1, 5 (App. Div. 2003).

"[A] dangerous condition[, however,] can be found to exist only when the public entity's property 'is used with due care.'"  Garrison, 154 N.J. at 287.  Where a plaintiff alleges a dangerous condition in a roadway, it must be proven that "the defect create[d] 'a substantial risk of injury' when the [roadway] is used with due care 'in the manner in which it is reasonably foreseeable it will be used.'"  Polyard, 160 N.J. Super. at 508.

"If a public entity's property is dangerous only when used without due care, the property is not in a 'dangerous condition'" under N.J.S.A. 59:4-2.  Garrison, 154 N.J. at 287.  "When the property poses a danger to all users, an injured party may establish that property was in a dangerous condition notwithstanding his or her failure to exercise due care."  Id. at 292.

The phrase "used with due care" means an "objectively reasonable" use.  Garrison, 154 N.J. at 291.  "A use that is not objectively reasonable from the community perspective is not one 'with due care.'  To this extent, 'used with due

care' refers not to the conduct of the injured party, but to the objectively reasonable use by the public generally." Ibid.

The Court in Garrison explained a court must engage in a two-part analysis to determine whether a plaintiff alleging injury based on a purported dangerous condition exercised due care under N.J.S.A. 59:4-2(a). Id. at 292; see also Vincitore, 169 N.J. at 126 (explaining the Garrison standard); Buddy v. Knapp, __ N.J. Super. __, __ (App. Div. 2021) (slip op. at 34). "Once a dangerous condition is found to exist," courts must identify: (1) "whether the property poses a danger to the general public when used in [a] normal, foreseeable manner," and (2) "whether the nature of the . . . activity is 'so objectively unreasonable' that the condition of the property cannot reasonably be said to have caused the injury." Buddy, __ N.J. Super. at __ (slip op. at 34) (quoting Vincitore, 169 N.J. at 125).

"Whether property is in a 'dangerous condition' is generally a question for the" jury, as "the finder of fact." Vincitore, 169 N.J. at 123. However, a court may properly decide whether property is in a dangerous condition under N.J.S.A. 59:4-1(a) where it determines a reasonable factfinder could not find the plaintiff established the property was in a dangerous condition. Id. at 124; see also Polyard, 160 N.J. Super. at 510 (explaining a court may determine if a

property is in a dangerous condition under N.J.S.A. 59:4-1(a) where the evidence does not permit "reasonable minds to differ as to whether" the condition is dangerous); cf. Daniel v. N.J. Dep't of Transp., 239 N.J. Super. 563, 573 (App. Div. 1990) (finding trial court properly allowed a jury to consider a public entity's liability under N.J.S.A. 59:4-2, where a reasonable jury could conclude the property was in a dangerous condition).

Measured against these principles, we are convinced no reasonable jury could conclude the depression in the street "create[d] a substantial risk of injury when" the street was "used with due care in a manner in which it is reasonably foreseeable that it [would] be used." N.J.S.A. 59:4-1(a); Garrison, 154 N.J. at 287. Accepting her version of the facts as true, plaintiff was injured after opting to walk down the middle of the street to the municipal building instead of using the available sidewalk immediately adjacent to her car. "Roadways generally are intended for and used by operators of vehicles," Polzo, 209 N.J. at 71, and "[w]here sidewalks are provided[,] it [is] unlawful for any pedestrian to walk along and upon an adjacent roadway," N.J.S.A. 39:4-34. Indeed, it is clearly dangerous for pedestrians to walk within the lanes of a street intended for vehicular traffic.

A-0988-20

The record lacks any evidence the traffic lanes of South High Street had been used as a pedestrian pathway such that it was reasonably foreseeable that individuals would use it, as opposed to the adjacent sidewalk, as a pedestrian pathway to the municipal building. We are not convinced plaintiffs' conclusory assertion "everybody walks on the roadway," her claim others walked on the street when she did, and her argument it should have been anticipated individuals would walk down the middle of the street to get to the municipal building establish it was reasonably foreseeable the street's vehicular traffic lanes would be used unlawfully, N.J.S.A. 39:4-34, and dangerously as a pedestrian pathway. The evidence further established the depression was within the permissible limitations imposed by New Jersey Department of Transportation regulations for the only use of the street that was reasonably foreseeable — vehicular traffic. See Polzo, 209 N.J. at 64 (noting "[p]otholes and depressions are common features of our roadways"). The motion court correctly concluded plaintiff failed to present evidence the depression constituted a dangerous condition creating a substantial risk of injury when the street was used in a reasonably foreseeable manner.

Plaintiff also did not present evidence establishing another essential element of a dangerous condition under N.J.S.A. 59:4-1(a). The undisputed

A-0988-20

facts established plaintiff did not exercise due care as she walked in the traffic lanes of South High Street. The users of the street included vehicles, and there is no evidence the depression posed any risk of injury to the vehicle operators. Because the property did not pose a danger to all users of the street, plaintiff was required to present evidence she used the property with due care to satisfy her burden of proving a dangerous condition under N.J.S.A. 59:4-1(a). Garrison, 154 N.J. at 292.

The undisputed facts establish plaintiff did not exercise due care under N.J.S.A. 59:4-1(a). She did not use the street in an "objectively reasonable" manner based on a "community perspective" because the only "objectively reasonable use" of the street "by the public generally" is for vehicular traffic. Garrison, 154 N.J. at 291. Again, walking down the middle of the street where sidewalks are available is unlawful, N.J.S.A. 39:4-34, and, as recognized by the Court in Polzo, roadways are intended for vehicular traffic, 209 N.J. at 71. The record is bereft of any evidence that an objectively reasonable use of South High Street by the public generally includes walking in the middle of its vehicular traffic lanes. In fact, the evidence establishes that it is not. Plaintiff therefore failed to present evidence establishing she exercised the due care required to

13

prove the depression in the street constituted a dangerous condition under N.J.S.A. 59:4-1(a) and N.J.S.A. 59:4-2(a).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0988-20